Lisa J. Espada. Esq., SBN 202975
Law Office of Lisa J. Espada
71 Stevenson St., Suite 400
San Francisco, CA 94105
Telephone: (415) 504-6195
Facsimile: (855) 504-6195
Email: lisa@sfbay-law.com

Attorney for Plaintiff
MARILYN ESPADA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| MARILYN ESPADA, | ) Case No. |
| | ) |
| Plaintiff, | ) COMPLAINT FOR DAMAGES |
| | ) |
| vs. | ) Equal Credit Opportunity Act |
| | ) 15 United States Code 1691 et seq. |
| SAN MATEO CREDIT UNION, | ) 12 C.F.R. § 202.7 |
| | ) 12 C.F.R. § 202.9 |
| Defendant. | ) 12 C.F.R. § 202.4 |
| | ) |
| | ) Truth in Lending Act |
| | ) 15 United States Code 1601 et seq. |
| | ) 12 C.F.R. § 226.12 |
| | ) |
| | ) JURY TRIAL DEMANDED |
| | ) |
| | ) |

**INTRODUCTION**

1. This is an action for actual damages, punitive damages, statutory damages, attorney's fees and costs brought by an individual consumer for violations of the Equal Credit Opportunity Act ("ECOA") and the Truth in Lending Act ("TILA").

COMPLAINT FOR DAMAGES
- 1 -

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations pertaining to Plaintiff or her attorney, which Plaintiff alleges on personal knowledge.

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and upon the statutory authorities cited herein.

4. As Defendant does business in the State of California and carried out the actions that form the basis for this suit with the intent to cause effects in the State of California, this Court has personal jurisdiction over Defendant for purposes of this action.

## VENUE

5. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because the events or omissions giving rise to the Plaintiff's claim occurred in this judicial district.

## INTRADISTRICT ASSIGMENT

6. Pursuant to Local Rule 3-2(c), assignment to the San Francisco/Oakland Division is proper because the causes of action addressed herein arose in San Mateo County, California.

## PARTIES

7. Plaintiff Marilyn Espada is a natural person and resident of Pacifica, California. Plaintiff is a current member of the San Mateo Credit Union ("SMCU"). Plaintiff is an "applicant" as that term is defined in 12 C.F.R. 202.2(e). Plaintiff is a "cardholder" and "consumer" as those terms are defined in 12 C.F.R. 226.2(a). Plaintiff is over the age of 65 and is "elderly" as that term is defined in 12 C.F.R. 202.2(o).

8. Defendant SMCU is a credit union licensed by the California Department of Business Oversight, which has its main office in Redwood City, California. SMCU may be served through its registered agent, Barry Lee Jolette, 350 Convention Way, Redwood City, CA 94063.

///

///

## FACTUAL ALLEGATIONS

9. On July 12, 2012, Plaintiff Marilyn Espada and her husband, Frank Espada, ("the Espadas") applied for membership with SMCU.  The Espadas were eligible for membership because they lived in San Mateo County at the time of the application.

10. The Espadas signed a Membership Agreement.  Shortly afterwards, SMCU approved the application and opened checking and savings accounts for both Marilyn and Frank Espada.   Each account was a joint account.

11. SMCU issued debit cards to the Espadas to be used in connection with the checking accounts.  The Espadas made deposits in each account and began using the accounts in July of 2012.

12. Frank Espada was a veteran of the United States military.  He had a service-related injury and became disabled as a result of that injury.  In 2012, he applied for disability benefits through the Veteran's Administration (VA).   In 2013, the VA approved his claim and awarded benefits retroactively, from the date of the application through the date of the payment.  The United States government then issued a payment for retroactive disability benefits.

13. On September 18, 2013, The Espadas deposited a United States Treasury check into one of their SMCU accounts.

14. On November 14, 2013, the Espadas visited the Westlake Branch of SMCU to apply for a credit card.

15. A copy of the credit application and Consumer Credit Card Agreement are attached as **Exhibit A** to this Complaint.

16. The credit application indicates that the Espadas applied for a "joint credit card account."

17. The Espadas were deemed credit-worthy based upon satisfactory credit scores.  Frank Espada's credit score was 737; Plaintiff's credit score was 734.  SMCU approved the application and gave the Espadas a $15,000 line of credit. SMCU issued plastic credit cards to both Frank Espada and Marilyn Espada, with the same 16-digit account number ending in 7415

COMPLAINT FOR DAMAGES
- 3 -

("the SMCU Visa Account.")

18. In November of 2013, the Espadas requested balance transfers to pay off three (3) other credit cards. SMCU made payments to the other lenders to transfer those balances to the SMCU Visa Account.

19. From that point forward, and for all times relevant to this action, Plaintiff made all payments that were due on the SMCU Visa Account in a timely manner.

20. On February 16, 2014, Frank Espada died. Within two to three weeks of that date, Plaintiff informed SMCU of Mr. Espada's death.

21. In March of 2014, Plaintiff attempted to use a debit card linked to the checking account that her husband used, and the card was declined. Plaintiff then contacted SMCU's main office by phone and spoke with Teri Western. During that call, Ms. Western advised Plaintiff of the following:

- the checking account had been closed, the debit card cancelled
- the remaining balance in the checking account had or would be transferred to one of the joint savings accounts (account number 497777-00)
- the Espada's SMCU Visa Account was or would be closed
- Plaintiff should re-apply for credit if she wished to continue using the SMCU Visa Account
- Plaintiff should bring a copy of Frank Espada's death certificate to the Westlake Branch.

22. Plaintiff brought an official death certificate to the Westlake Branch as requested. Plaintiff also obtained a blank application so that she could re-apply for credit.

23. On May 9, 2014, Plaintiff visited the Westlake Branch of SMCU, partially completed a credit application and spoke with SMCU Loan Advisor Ben Gomez, Jr. Plaintiff explained to Mr. Gomez that her application for VA survivor benefits was pending, and she did not know what her income would be from that source. Plaintiff stated that, in addition to VA survivor benefits and Social Security income, she expected to receive income from the sale of fine art photography.

COMPLAINT FOR DAMAGES
- 4 -

24. SMCU Loan Advisor Ben Gomez, Jr. briefly reviewed the partially-completed application and handed it back to Plaintiff. Mr. Gomez stated that, based on the income shown, it was "pointless" to submit the application. Mr. Gomez refused to accept Plaintiff's application, despite the fact that Plaintiff had been deemed qualified in November of 2013, had made timely payments on the Account, and had sufficient assets available to maintain the Account in good standing.

25. The SMCU Loan Advisor made no inquiry into Plaintiffs' credit score, funds in Plaintiff's SMCU accounts or the resources that Plaintiff had outside of those accounts which would enable her to make the required payments.

26. Plaintiff did not receive a written notice of any kind to advise her of the action taken closing the SMCU Visa Account and/or revoking the line of credit previously granted to Plaintiff, or that an action may be taken which would affect the funds in one of Plaintiff's savings accounts. Plaintiff did not receive a written notice that her application for continued credit had been denied.

27. On a date currently unknown to Plaintiff, SMCU put a hold on funds in account number 497777-00, in an attempt to offset the amount owed on the SMCU Visa Account with assets in the Plaintiff's savings account.

28. On May 29, 2014, the balance in the savings account was $6,882.08.

29. On or about May 29, 2014, as a result of her online banking activity, Plaintiff first discovered that the funds in SMCU savings account number 497777-00 were "unavailable." Because the funds were unavailable, Plaintiff could not make an online transfer from that account to make the payment due on the SMCU Visa Account. Plaintiff called SMCU and was advised by SMCU that she could make a monthly payment by calling Teri Western every month and making a verbal request for the transfer.

///

///

30. In June of 2014, Plaintiff began to investigate the reason why the funds in Plaintiff's savings account were unavailable for transfer or withdrawal. In response to a phone inquiry, an SMCU representative advised Plaintiff that the funds were being held in relation to "an open balance on the credit card."

31. Plaintiff was confused and upset about the unavailability the funds in the joint savings account. Plaintiff contacted the California Department of Business Oversight (DBO). Plaintiff explained the circumstances of her accounts and was advised by a DBO representative that the actions taken by SMCU were not legal. The DBO suggested that Plaintiff submit a complaint to that office.

32. Plaintiff then sought the assistance of an attorney to help her resolve the issue of the "unavailable" funds.

33. On July 18, 2014, Plaintiff and her attorney visited the SMCU Westlake Branch and spoke to with SMCU Assistant Branch Manager Ellen Legaspi. Plaintiff provided Ms. Legaspi with the following:

- a letter explaining the status of Plaintiff's accounts and that the funds made "unavailable" were exempt under 38 U.S.C. § 5301;
- an Affidavit for Collection of Personal Property pursuant to Probate Code § 13100;
- a copy of the United States Treasury check dated September 9, 2013;
- a copy of the deposit receipt dated September 18, 2013;
- a copy of the text of 38 U.S.C. § 5301(a) and (b);
- questions that Plaintiff sought answers to regarding SMCU's actions, including the date the SMCU Visa Account was closed and the reason(s) why it was closed.

34. The SMCU Assistant Branch Manager received the above documents and immediately placed a call to Dani Robinson, an executive in SMCU's main office. Plaintiff and her counsel began to explain the situation to Ms. Robinson. As soon as it became apparent that Plaintiff had legal representation, Ms. Robinson discontinued the phone call. Plaintiff and her attorney left the Westlake Branch without being given any information or answers to Plaintiff's

questions.

35. Within a few days of the Plaintiff's visit to the SMCU Westlake Branch, Plaintiff viewed her account information online and saw that the hold had been released from account number 497777-00.

36. In late July of 2014, Plaintiff opened checking and savings accounts at another financial institution and transferred her money into the new accounts.  Her new bank granted her a line of credit without a formal application or inquiry into Plaintiff's income.

37. Plaintiff never received an explanation from SMCU regarding the closure of the SMCU Visa Account or the hold placed on funds in Plaintiff's savings account.

38. Plaintiff has incurred actual damages including the cost to bring this lawsuit. Defendant's actions caused Plaintiff inconvenience, confusion, anxiety, emotional distress and embarrassment, during the time when she was mourning the loss of her husband of 62 years and attempting to manage other pressing matters.

## COUNT I – EQUAL CREDIT OPPORTUNITY ACT
## TERMINATION OF EXISTING OPEN-END ACCOUNT (12 C.F.R. 202.7)

39. Plaintiff re-alleges and incorporates herein by reference the allegations contained in paragraphs 1 – 38, above.

40. The Equal Credit Opportunity Act (ECOA) and Regulation B apply to all persons who are "creditors" as defined by 12 C.F.R. § 202.2(1).  SMCU is a creditor under the ECOA because, in the ordinary course of business, its employees regularly make or participate in credit decisions.

41. The purpose of the ECOA is to promote the availability of credit to all creditworthy applications without regard to race, color, religion, national origin, sex, marital status or age, or the fact that the all or part of the applicant's income derives from a public assistance program.[1]

---

[1] 12 CFR 202.1(b)

42. Regulation B defines "open end credit" as: credit extended under a plan which a creditor may permit an application to make purchases or obtain loans from time to time directly from the creditor or indirectly by use of a credit card, check or other device.[2]  The SMCU Visa Account was an open-end credit account.

43. With respect to open-end accounts, Regulation B states:

> "a creditor shall not take any of the following actions regarding an application who is contractually liable on an existing open-end account on the basis of the applicant's reaching a certain age or retiring or on the basis of a change in the applicant's name or marital status:
>
> (i)   Require a reapplication, except as provided in paragraph (c)(2) of this section;
> (ii)  Change the terms of the account;
> (iii) Terminate the account.[3]

44. Plaintiff was contractually liable on the SMCU Visa Account because Plaintiff and her husband submitted an application for a joint account, and Plaintiff signed an agreement to make payments that were due and to comply with all other terms.

45. Plaintiff's marital status changed when her husband passed away.

46. After the change in Plaintiff's marital status, SMCU terminated the SMCU Visa account in violation of Regulation B.

## COUNT II – EQUAL CREDIT OPPORTUNITY ACT

## FAILURE TO PROVIDE WRITTEN NOTIFICATION (12 C.F.R. 202.9)

47. Regulation B requires creditors to provide written notifications following certain events or actions, including an "adverse action," which is defined as:

> (i) A refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer and the applicant uses or expressly accepts the credit offered;
> (ii) **A termination of an account** or an unfavorable change in the terms of an account that does not affect all or substantially all of a class of the creditor's accounts; or

---
[2] 12 CFR 202.2(w)
[3] 12 CFR 202.7(c)

(iii) A refusal to increase the amount of credit available to an applicant who has made an application for an increase.[4]

48.     Within thirty (30) days of an adverse action, a creditor is required to provide the applicant with a written notification which must contain:

[A] statement of the action taken; the name and address of the creditor; a statement of the provisions of § 701(a) of the Act; the name and address of the federal agency that administers compliance with respect to the creditor; and either:
(i) A statement of specific reasons for the action taken; or
(ii) A disclosure of the applicant's right to a statement of specific reasons within 30 days, if the statement is requested within 60 days of the creditor's notification.[5]

49.     SMCU terminated Plaintiff's SMCU Visa Account on an unknown date between March 1, 2014 and May 29, 2014.  Termination of the account was an "adverse action."

50.     Plaintiff never received a written notification from SMCU regarding the termination of the SMCU Visa Account, in violation of Regulation B.

51.     Even after Plaintiff made a written request for the date of the termination and a statement of the reasons why the Account was terminated, SMCU failed to provide that information.

## COUNT III: EQUAL CREDIT OPPORTUNITY ACT
## DISCOURAGEMENT ON PROHIBITED BASIS (12 C.F.R. 202.4)

52.     The ECOA prohibits discrimination on any prohibited basis regarding any aspect of a credit transaction.  Regulation B further states:

A creditor shall not make any oral or written statement, in advertising or otherwise, to applicants or prospective applicants that would discourage on a prohibited basis a reasonable person from making or pursuing an application.[6]

53.     Plaintiff was a credit-worthy applicant, because she had a qualifying credit score, an existing Visa account, and was not in default.  Plaintiff was therefore a "reasonable person" seeking continued credit.

---

[4] 12 CFR 202.2(c)
[5] 12 CFR 202.9(a)(2) The ECOA notice must contain the information described in 12 CFR 202.9(b).
[6] 12 CFR 202.4(b)

COMPLAINT FOR DAMAGES
- 9 -

54. SMCU discouraged Plaintiff from pursuing an application for continued credit based upon Plaintiff's age, marital status, and sources of income.

55. SMCU's refusal to accept Plaintiff's application was in essence a denial of continued credit and an adverse action under Regulation B.

56. Plaintiff never received a written notification from SMCU regarding its denial of continued credit, in violation of Regulation B.

57. SMCU's actions described herein (Counts I – III) were intentional and in reckless disregard of Plaintiff's rights and the applicable law. SMCU is therefore liable for actual damages, punitive damages of up to $10,000, litigation costs and reasonable attorney's fees.[7]

## COUNT IV – TRUTH IN LENDING ACT (12 CFR 226.12)

58. Plaintiff re-alleges and incorporates herein by reference the allegations contained in paragraphs 1 – 57, above.

59. Plaintiff further alleges that Defendant violated the Truth in Lending Act, 15 U.S.C. § 1666h(a) and 12 CFR 226.12(d), which states:

(d) Offsets by card issuer prohibited.

(1) A card issuer may not take any action, either before or after termination of credit card privileges, to offset a cardholder's indebtedness arising from a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer.

60. Freezing or placing a hold on funds in a cardholder's deposit account is the functional equivalent of an offset and violates Section 226.12(d)(1), unless done in the context of one of the exceptions specified in Section 226.12(d)(2).[8]

61. Section 10 of the SMCU Loanliner Visa Consumer Credit Card Application states that the applicants grant SMCU a security interest in "all other shares that you have in any individual or joint account with the Credit Union" and that that applicants "authorize the Credit Union to apply the balance in your individual or joint share accounts to pay any amounts due on

---

[7] 12 CFR 202.16(b)
[8] Official Staff Commentary on Regulation Z

your Account *should you default*." (emphasis added)

62. The Loanliner Visa Consumer Credit Card Application does not do any of the following: (a) obtain a separate signature or initials on the agreement indicating that a security interest was being given; (b) place the security agreement on a separate page from the other provisions; (c) refer to a specific amount of deposited funds or a specific deposit account number.

63. By placing a hold on the funds in account number 497777-00, SMCU attempted to claim those funds as an offset of the amount then owed on the SMCU Visa Account.

64. At the time SMCU placed a hold on the funds in account number 497777-00, Plaintiff was not in default. Plaintiff, a joint account holder who was contractually liable on an existing open-end account, had not died, and she had not missed a payment, made a payment late, or paid less than the minimum amount due.

65. SMCU placed a hold on the funds in account number 497777-00 and attempted to claim those funds as an offset for one reason only: because Plaintiff's husband had died.

66. SMCU's action was also improper because funds deposited or transferred into that account originated from a payment made by the United States government to Frank Espada, as VA disability compensation.[9]

67. As a result of SMCU's violation of Regulation Z, SMCU is liable to Plaintiff for actual damages, an amount no less than $500.00 if any finance charge was applied during the relevant time period, and reasonable attorney's fees necessary to bring this action.[10]

///
///
///
///

---

[9] 38 U.S.C. § 5301(b) prohibits the collection by setoff or otherwise out of any benefits payable pursuant to any law administered by the Secretary (of Veteran's Affairs) and relating to veterans, their estates, or their dependents.

[10] 15 U.S.C. § 1640(a)

COMPLAINT FOR DAMAGES
- 11 -

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages from Defendant, as follows:

1. An award of actual damages pursuant to 12 CFR §202.16(b) and 15 U.S.C. § 1640(a)
2. An award of punitive damages of $10,000 pursuant to 12 CFR §202.16(b);
3. An award of at least $500.00 for any finance charge applied during the relevant time period, pursuant to 15 U.S.C. § 1640(a)(2);
4. An award of reasonable attorney's fees and costs pursuant to § 12 CFR §202.16(b) and 15 U.S.C. § 1640(a)(3);
5. Such other and further relief this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff demands a trial by jury.

Dated: February 17, 2015                                LAW OFFICE OF LISA J. ESPADA

                                        By:    */s/ Lisa J. Espada*_____
                                               Lisa J. Espada, Esq.
                                               Attorney for Plaintiff
                                               MARILYN ESPADA